UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Cabo Holdings, LLC,

               Plaintiff,

   vs.

Fred Engelhart d/b/a Engelhart
Performance; and So Cal
Collectibles, Inc.,

               Defendants.          Civ. No. 07-3524 (PJS/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge

pursuant to a special assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(A), upon the Motion of Briggs and Morgan, P.A. ("Briggs"), for

leave to withdraw from its representation of the Defendant So Cal Collectibles, Inc.

("So Cal").  A Hearing on the Motion was conducted on September 9, 2008, at which

time, the Plaintiff Cabo Holdings, LLC ("Cabo"), appeared by Matthew T. Boos, Esq., and So Cal appeared by Julie H. Firestone, Esq. ("Firestone").[1]

For reasons which follow, we recommend that Briggs' Motion to Withdraw be granted, and we further recommend that So Cal's Answer be stricken, and that the Clerk of Court enter Default against So Cal for its failure to comply with this Court's Order, and for failure to participate in its defense of this action.

## II.  Factual and Procedural Background

This is a diversity action brought by Cabo, a Wisconsin corporation, against the Defendant Fred Engelhart ("Engelhart"), a Minnesota citizen d/b/a Engelhart Performance, and So Cal, a California corporation.  See, Amended Complaint, Docket No. 37.  In December of 2005, Engelhart approached Cabo about obtaining a loan of $225,000.00, and offering title to a 1970 Chevrolet Chevelle (the "Vehicle") as collateral for the loan.[2]  Id. at ¶5.  In exchange for that loan, Engelhart promised to sell

---

[1]On September 21, 2007, the Plaintiff was awarded a Default Judgment against the Defendant Fred Engelhart ("Engelhart"), see, Docket No. 10, and accordingly, no appearance was made by, or on behalf of Engelhart, at the time of the Hearing.

[2]We note that the Amended Complaint states, apparently in error, that Engelhart initially approached Cabo in December of 2006, and that, following that meeting, the parties memorialized their agreement in January of 2006.  As a consequence, it appears likely that the first meeting was, in fact, held in December of 2005.  However,
(continued...)

the Vehicle at an upcoming auction (the "Auction"), and guaranteed that Cabo would recover the $225,000.00 from the proceeds, with the parties splitting any remaining profits. Id.

According to Cabo, on January 2, 2006, Cabo, Engelhart, and So Cal, which agreed to broker the sale of the Vehicle at the Auction, signed an Agreement that outlined the terms for the sale of the Vehicle. Id. at ¶¶6, 8, and Exhibit A. The Agreement provides that, if the Vehicle sold at the Auction, So Cal would remit the net proceeds of the sale directly to Cabo, minus auction fees, and Cabo would then divide any profits, over $225,000.00, with Engelhart but, if the Vehicle sold for less than $225,000.00, Engelhart would pay Cabo the difference between that sum and the amount obtained at the Auction. Id. at ¶¶9-11.

Following the signing of the Agreement, Cabo transferred the $225,000.00 to Engelhart, and delivered the title of the Vehicle to So Cal. Id. at ¶8. In the Amended Complaint, Cabo alleges that the Vehicle was sold at the Auction, which took place on January 20, 2007, for the sum of $140,000.00, and that the Defendants have failed to pay Cabo the amount due under the Agreement. Id. at ¶¶14-15.

─────────────────

(...continued)
in the Plaintiff's Statement of the Case, Cabo represents that it first spoke with Engelhart about the loan in January of 2007. See, Docket No. 12, at p. 1.

By way of additional background, on July 14, 2008, the District Court, the Honorable Patrick J. Schiltz, denied So Cal's Motion for Summary Judgment. See, Order, Docket No. 52. In its Order, the District Court directed that, if this action proceeds to Trial, then Cabo and So Cal will be required to submit further briefing on two issues: 1) "the relation between the contract and tort claims of Cabo"; and 2) "what effect the default judgment entered against defendant Fred Engelhart has on this case." Id. at 1. The District Court explained the need for further briefing, as follows:

> With respect to this second issue, the Court notes that Engelhart's liability seems to depend on the jury's factual findings about Cabo's claim against So Cal. If the jury finds that So Cal sold [the Vehicle] for $140,000, then Engelhart may be liable for something in the neighborhood of $85,000 (the difference between the $225,000 guaranteed price and the $140,000 sale price). If the jury finds that So Cal did **not** sell [the Vehicle], then according to paragraph 2.c. of the purported agreement among Cabo, So Cal, and Engelhart, Engelhart may be liable for a full $225,000. It thus appears that if Cabo prevails, So Cal and Engelhart will not be jointly and severally liable to Cabo. Rather, each party's liability (if any) is in some respects independent of the liability of the other party. These issues with respect to apportioning liability and damages will have to be resolved before trial.

Id. at 1-2 [emphasis in original].

Briggs now seeks to withdraw from its representation of So Cal, based, in part, upon So Cal's failure to make any payment for its legal services and related costs. See,

Briggs' Motion to Withdraw, Docket No. 55; Briggs' Memorandum in Support, Docket No. 57, at 1.

In support of its Motion, Briggs has submitted an Affidavit from Firestone, who attests that So Cal initially retained Briggs in August of 2007, and agreed to pay a $2,500.00 retainer, as well as any additional fees on a monthly basis. See, Affidavit of Julie Firestone ("Firestone Aff."), Docket No. 58, at ¶¶2-5. In addition to monthly invoices, Firestone sent letters to So Cal on January 3, February 11, February 14 and April 7, 2008, and spoke with So Cal's president both in person, and by telephone, concerning So Cal's nonpayment of fees. Id. at ¶¶8-11. However, Firestone avers that So Cal has not made a single payment, and that it now owes Briggs more than $41,000.00 for legal fees, plus more than $1,700.00 in related costs. Id. at ¶¶14-15. Firestone also avers that she has warned So Cal, on several occasions, that Briggs would withdraw from its representation if the fees were not paid. Id. at ¶¶7, 10, 13. Moreover, by letter dated September 5, 2008, Firestone cautioned So Cal that it could face a Default Judgment, if Briggs' Motion to Withdraw were granted, and if So Cal failed to obtain substitute counsel. See, Second Affidavit of Julie H. Firestone ("Second Firestone Aff."), Docket No. 63, Exhibit 3.

Lastly, Briggs advises that it has encountered difficulties in its attempts to communicate with So Cal throughout the course of this action, and particularly during the discovery period.  Id. at ¶¶7, 9-10 and Exhibits E-F.  Firestone avers that, until recently, So Cal did not respond to her telephone calls and letters, concerning this action, or So Cal's failure to pay its legal fees.  Id. at ¶¶12-14.

Despite receiving notice of Briggs' intention to withdraw from its representation, So Cal did not submit any written response to Briggs' Motion, nor did any representative of So Cal appear at the Hearing.  Accordingly, we directed Firestone to contact So Cal, in order to advise that a corporation is not able to proceed pro se in Federal Court, and we further directed So Cal, through its current counsel, that it had ten (10) days to secure alternate counsel, should it elect to proceed in this action without Briggs as its counsel, or that, alternatively, So Cal must consent to Default Judgment, should it elect to abandon its defense of this action.  By letter dated September 19, 2008, Firestone informed us that So Cal had not obtained substitute counsel, nor would it consent to default Judgment.  See, Docket No. 65.[3]

_____

[3]After the Hearing, we had belatedly realized that a Settlement Conference was scheduled for October 8, 2008, at which both the parties, and their respective counsel, were directed to be in attendance.  Accordingly, by Order dated September 26, 2008, we advised the parties that we would defer a ruling on Briggs' Motion to Withdraw,
(continued...)

Accordingly, on September 19, 2008, we took Briggs' Motion under advisement.

### III.  Discussion

A.     Briggs' Motion to Withdraw.

1.     Standard of Review.  Motions, by counsel of Record, to withdraw from their representation of a client, are inherently fact-specific, and are not readily amenable to a bright-line, doctrinaire approach.  Rather, the factual circumstances, which drive such Motions, must be considered in the context of the attorney's duties to the Court, to the client, and to the profession.  In this District, when an attorney seeks to withdraw, without a substitution of counsel -- as is the case here -- leave of Court is required.   See, D. Minn. LR83.7(c).[4]  We view the requirement, that a

---

[3](...continued)
given the possibility that the parties would reach an accord, and render the Motion moot.  See, Docket No. 66.

At the commencement of the Conference, the Court went on Record to determine whether So Cal had, by that time, retained substitute counsel, and we were informed that it had not, and that Briggs was continuing with its Motion to Withdraw. Unfortunately, the parties were unable to reach an amicable resolution of this matter at the Settlement Conference.

[4]D. Minn. LR83.7(c) provides as follows:

(continued...)

withdrawal of counsel in the absence of substitute counsel only be allowed with Court leave, to evince the Court's paramount interest in the administration of justice.  As the Court explained, in Hasbro, Inc. v. Serafino, 966 F. Supp. 108, 110 (D. Mass. 1997), quoting Hammond v. T.J. Litle & Co., 809 F. Supp. 156, 159 (D. Mass. 1992):

> [T]here exists an interest beyond that of the client or the attorney, namely, the interests of the Court.  "An attorney who agrees to represent a client in a court proceeding assumes the responsibility to the court as well as to the client.  Both attorney and client agree to a relationship between them that bears also upon their respective obligations to the court."

Beyond the duties owed to the Court, counsel are obligated to adhere to the governing Rules of Professional Responsibility.

In this District, we apply the Minnesota Rules of Professional Conduct in appraising the behavior of attorneys who practice before us.  See, D. Minn. LR83.6(d)(2).  Those Rules recognize circumstances which mandatorily commend the withdrawal of counsel -- none of which have been raised in this case.  See, Rule 1.16(a), Minnesota Rules of Professional Conduct.  The Rules also recognize

---

[4](...continued)
> Withdrawal without substitution may be granted only by a motion made before the Court, for good cause shown. Notice of the motion shall be provided to the client, and the motion shall be scheduled in accordance with LR7.1.

circumstances which allow permissive withdrawal, such as when "the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled," or when "the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client."  See, <u>Rule 1.16(b)(5)-(6)</u>, <u>Minnesota Rules of Professional Conduct</u>.

Here, Briggs does not assert that its continued representation of So Cal would cause any of its attorneys to violate the Minnesota Rules of Professional Conduct, although its stated concern, over the difficulties experienced in communicating with So Cal, may be a precursor to such violations.  Rather, in support of its Motion, Briggs asserts that So Cal has failed to pay its legal fees, thereby imposing an unreasonable financial burden on Briggs, and that its representation has been rendered unreasonably difficult by So Cal's failure to communicate with its counsel, throughout the course of this action.

For understandable reasons, the Court neither controls, nor desires to control, the access that litigants have to the attorney of their choice.  However, once an attorney has noted his or her appearance in this Court on behalf of a litigant, the Court requires control over whether the litigant should continue to be represented by that

attorney. Without such control, the Court's ability to manage its calendar, and to administer justice, would unavoidably suffer. See, Rule 1.16(c), Minnesota Rules of Professional Conduct ("A lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation," and "[w]hen ordered to do so by a tribunal, a lawyer shall continue representation notwithstanding good cause for terminating the representation.").

What constitutes "good cause" for the withdrawal of counsel, without substitution, cannot be readily defined, or categorized, but must be evaluated on a case-by-case basis, and determined by examining the reasons proffered for the asserted need to withdraw. See, Spearman v. Salminen, 379 N.W.2d 627, 632 (Minn. App. 1986). We have, in the past, found that good cause exists where counsel cannot adequately represent the client without traversing the governing Rules of Professional Conduct, or where a degree of fractiousness, between the client and counsel, has developed which inhibits "the just, speedy, and inexpensive determination of [the] action." Rule 1, Federal Rules of Civil Procedure; see also, Welch v. Niagra Falls Gazette, 2000 WL 1737947 (W.D.N.Y., November 17, 2000)(attorney can withdraw if presentation of the case to the Court might subject the attorney to sanctions for pursuing a meritless claim). On the other hand, we have held the mere prospect that

- 10 -

the action may not be as financially rewarding as counsel might have earlier anticipated, without more, would not satisfy the good cause showing.  See, Welch v. Niagra Falls Gazette, supra (holding that an attorney cannot withdraw simply because the case is weaker than originally thought, as that is a risk attendant to agreeing to representation).

        2.    Legal Analysis.  Given these precepts, we find that good cause exists to support Briggs' withdrawal from its representation of So Cal, given So Cal's demonstrated and intractable refusal to assist its counsel in a manner that would allow the timely resolution of this action, whether by settlement or Trial.  As noted, if this action were to proceed to Trial, the District Court has already directed the parties to brief several outstanding issues -- a task which Briggs will not be able to perform, absent the timely assistance of its client.  Indeed, Briggs has already assumed the burden of prosecuting a Motion for Summary Judgment, without any prospect of payment and, based upon the representations of counsel at the Hearing, largely without any assistance from So Cal.

"In addressing motions to withdraw as counsel, district courts have typically considered whether 'the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel." Whiting v. Lacara, 187 F.3d 317, 320-21 (2nd Cir. 1999),

quoting Brown v. National Survival Games, Inc., 1994 WL 660533 at *3 (N.D.N.Y.,

November 18, 1994); see also, Vachula v. General Electric Capital Corp., 199 F.R.D.

454, 458 (D. Conn. 2000).  Here, allowing Briggs to withdraw will necessarily result

in a disruption of this action's progress, given that So Cal cannot, as a corporation,

proceed without representation by an attorney.  See, Rowland v. California Men's

Colony, 506 U.S. 194, 201-02 (1993)(a corporation is an artificial entity that can only

act through agents, cannot appear pro se, and must be represented by counsel); see

also, Simitar Entertainment, Inc. v. Silva Entertainment, 44 F. Supp.2d 986, 990 (D.

Minn. 1999), quoting Ackra Direct Marketing Corp. v. Fingerhut Corp., 86 F.3d 852,

857 (8th Cir. 1996); United States v. Van Stelton, 988 F.2d 70, 70 (8th Cir. 1993); Carr

Enters., Inc. v. United States, 698 F.2d 952, 953 (8th Cir. 1983)("It is well settled law

that a corporation may be represented only by licensed counsel.").

However, we agree with Briggs that "this is not a complex case," and that So

Cal has had "ample opportunity to retain new counsel" before Trial, given that one (1)

month has now passed since we directed So Cal to secure a new lawyer, or face

Default Judgment.  Compare, Logicom Inclusive, Inc. v. W.P. Stewart & Co., 2008

WL 1777855 at *2 (S.D.N.Y., April 16, 2008)(granting a Motion to Withdraw, based

upon nonpayment of fees, and stating that "[t]he order the Court will enter will give

plaintiff Logicom an additional time within which to appoint substitute counsel or Logicom's claims will be dismissed pursuant to Rule 41(b), Fed.R.Civ.P., for failure to prosecute."). Here, So Cal has advised that it has not secured alternate counsel, in the time since the Hearing, and does not intend to do so. As a consequence, without legal representation, So Cal will not be able to participate at Trial, nor will it be able to assert any defenses.

Under such circumstances, we conclude that there is no benefit in directing Briggs to continue its representation of So Cal, given that So Cal has demonstrated its unwillingness to participate in this action, or to assist its counsel in preparing its defenses.[5] Moreover, we will not permit So Cal to hamper the efforts of its counsel, Cabo, and the Court, to move this action to a resolution, whether by settlement or otherwise. While it might be argued that Briggs should be made responsible to fund So Cal's defense, given So Cal's refusal to pay Briggs, or to retain substitute counsel, the inanity of such an argument is obvious. Briggs has funded So Cal's defense to

---

[5]In fairness to So Cal, we note that, by direct Order of this Court, a principal of So Cal, with full settlement authority, attended the Settlement Conference, and therefore, did not disobey the Court's directive in that respect. While the Conference was not successful, we made plain to So Cal's corporate representative, that we would take such action with respect to Briggs' Motion without regard to the absence of a settlement agreement.

this date, and has properly -- in this Court's view -- attended to its professional responsibilities, but enough is enough. Briggs is not a party to this action, and therefore, it bears no responsibility, express or implied, to provide gratuitous finances to So Cal. As a consequence, we recommend that Briggs' Motion to Withdraw be granted.

      B.    <u>Entry of Default as a Sanction</u>.

      Given that So Cal cannot proceed in this action without counsel, and given its disobedience to our prior Order, we now recommend that its Answer be stricken, and that the Clerk of Court enter Default against So Cal, as a sanction for its misconduct.

      We recognize that "[t]here is a strong public policy, supported by concepts of fundamental fairness, in favor of trial on the merits, see, e.g., <u>Jackson v. Beech</u>, 636 F.2d 831, 835 (D.C. Cir. 1980), particularly when monetary damages sought are substantial." <u>Swink v. City of Pagedale</u>, 810 F.2d 791, 792 n.2 (8th Cir. 1987), cert. denied, 483 U.S. 1025 (1987), citing 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, <u>Federal Practice and Procedure</u> §2693, at 482-85 (2d ed. 1983). Accordingly, entry of Judgment by Default is a drastic remedy which should be used only in extreme situations. See, <u>Flaksa v. Little River Marine Constr. Co.</u>, 389 F.2d

- 14 -

885, 887 (5th Cir.), cert. denied, 392 U.S. 928 (1968); see also, <u>Int'l Bhd. of Elec.</u>
<u>Workers v. Hope Elec. Corp.</u>, 380 F.3d 1084, 1105 (8th Cir. 2004)(District Court did
not abuse discretion in imposing severe sanction of striking Answer and entering a
Default Judgment, where defendant improperly objected to discovery requests as
burdensome and provided only partial responses); <u>Federal Deposit Ins. Corp. v.</u>
<u>Manatt</u>, 723 F. Supp. 99, 106 (E.D. Ark. 1989).

"Where a defendant appears and indicates a desire to contest an action, a court
may exercise its discretion to refuse to enter default, in accordance with the policy of
allowing cases to be tried on the merits." <u>Lee v. Bhd. of Maint. of Way Employees</u>,
139 F.R.D. 376, 381 (D. Minn. 1991), citing 10 Charles A. Wright, Arthur R. Miller
& Mary K. Kane, <u>Federal Practice and Procedure</u> §2682, at 411 (2d ed. 1983).  In the
final analysis, Default Judgments are not favored in the law, and the entry of such a
Judgment is only appropriate when there has been a clear record of delay or
contumacious conduct.  See, <u>United States on Behalf of and for the Use of Time</u>
<u>Equip. Rental & Sales, Inc. v. Harre</u>, 983 F.2d 128, 130 (8th Cir. 1993); <u>Taylor v. City</u>
<u>of Ballwin, Missouri</u>, 859 F.2d 1330, 1332 (8th Cir. 1988).

In our view, the entry of a Default Judgment should be a "rare judicial act."
<u>Comiskey v.  JFTJ Corp.</u>, 989 F.2d 1007, 1009 (8th Cir. 1993), citing <u>Edgar v.</u>

- 15 -

Slaughter, 548 F.2d 770, 773 (8th Cir. 1977).  In appropriate circumstances, however, where delay, inattention, inadvertence, or the like, has become inordinate, an entry of Default serves a needed and useful purpose.  See,  Flaksa v. Little River Marine Constr. Co., supra at 887 ("It is well established that the district court has the authority to dismiss or to enter default judgment, depending on which party is at fault, for failure to prosecute with reasonable diligence or to comply with its orders or rules of procedure.")[footnote omitted].  Moreover, "[t]he authority of a court to dismiss sua sponte for lack of prosecution has generally been considered as an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Id. at 887 n. 3, quoting Link v. Wabash R. Co., 370 U.S. 626, 630 n. 1 (1962); see also, United States v. Certificate of Deposit, 84 F.3d 1034, 1034-1035 (8th Cir. 1996)(citing same).

Here, Default Judgment is not yet possible, given the outstanding issues relating to So Cal's share of liability, as identified in the District Court's prior Order. Nonetheless, we are confronted with the direct disobedience of this Court's Order, which was without excuse, justification, or defense.  If parties are free to ignore, or disregard, the lawful Orders of the Court, the judicial processes would be substantially

- 16 -

undermined, and faith in the Court's ability to pursue justice would be doubted.  We conclude that, in this instance, any lesser sanction, would be ineffective in persuading So Cal to participate in this action, and abide by the Rules that govern all, given that So Cal has already demonstrated its intention to make use of Briggs' legal services without any payment, and its refusal to retain substitute legal counsel.  We believe that the sanction of a Default Judgment was designed to address the rare occasions, such as this, where the noncompliant party admits its disobedience, provides no justification, and makes no offer to correct its behavior.

We are not aware of any authority which would require the Court to plead, persuade, or cajole, a party into participating in litigation, in order to present its alleged defenses.  Moreover, we are struck by the inequity that arises given that the Trial is fast approaching, which will require substantial preparation by Cabo, for a Trial which cannot occur, given So Cal's failure to make any serious attempt to secure new counsel.  So Cal has clearly evinced an unyielding disinterest in asserting their defenses against Cabo, and we see no reason, either in law or equity, to delay what appears to be the inevitable conclusion of this action.  To prolong this proceeding would unduly burden the administration of justice, and the time and resources of both Cabo, and this Court.

Accordingly, we recommend that an entry of Default be entered against So Cal, as a sanction for their willful disobedience of our Order, and for their deliberate failure to participate in this action. We recognize that further proceedings will be necessary, by way of formal briefing, a Hearing, or both, before a Default Judgment can be entered, in order to resolve the amount of So Cal's liability, if our recommendation is adopted.

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Motion of Briggs and Morgan, P.A., to Withdraw as Counsel for So Cal Collectibles, Inc., [Docket No. 55] be granted.

2.      That the Clerk of Court be directed to strike So Cal's Answer, and to enter a Default against So Cal.

3.      That Default Judgment be entered against So Cal, in an amount to be determined, following appropriate briefing, or a Hearing, before the District Court.


Dated:  October 14, 2008                      s/Raymond L. Erickson
                                              Raymond L. Erickson
                                              CHIEF U.S. MAGISTRATE JUDGE

NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than October 31, 2008,** a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than October 31, 2008,** unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.